UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SAFETY HARBOR POWERSPORTS, LLC,

    Plaintiff,

v.                        Case No. 8:23-cv-2399-VMC-UAM

CITY OF SAFETY HARBOR, FLORIDA,
PAUL BUSHEE, and MATT SPOOR,

    Defendants.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendants City of Safety Harbor, Florida, Paul Bushee, and Matt Spoor's Motion to Dismiss (Doc. # 13), filed on October 30, 2023. Plaintiff Safety Harbor Powersports, LLC, filed a response to the Motion on November 27, 2023. (Doc. # 23). For the reasons set forth below, the Motion is granted.

**I.**    **Background**

**A.**    **Plaintiff Safety Harbor Powersports, LLC**

Plaintiff Safety Harbor Powersports, LLC "specializes in the repair and maintenance of motorcycles, golf carts and related motor vehicles." (Doc. # 1-1 at ¶ 8). Plaintiff leases a property for this business, encompassing both Suite A and Suite B at 915 Harbor Lake Drive, Safety Harbor, Florida. (Id.). "On or about March 4, 2019, the City Commission

1

approved a conditional use permit ('CUP') agreement" that allows Plaintiff to sell motorcycles at Suite B and requires that all motorcycles for sale be stored indoors at all times. (Id. at ¶ 9). Plaintiff asserts that the CUP has "vague and ambiguous wording" and that Defendants have failed to recognize this fact. (Id. at ¶ 21).

### B.   Code Violations

After the CUP was issued, Plaintiff's primary owner and a Hillsborough County Sheriff's Deputy, Adam Bergman, reached out to Defendant Paul Bushee, a Community Compliance Officer who "performs code enforcement duties" for the City of Safety Harbor, to inform him that Precision Motorsports, a neighboring business, was violating City codes. (Id. at ¶¶ 4, 10). Specifically, Bergman asserted that "Precision Motorsports was failing to adhere to applicable parking guidelines by allowing overflow parking in the streets," allowing employees and customers to park on Plaintiff's property, and displaying prohibited business signage. (Id. at ¶ 11). "Bushee and the City notified Precision Motorsports of its code violations but failed to bring the business within compliance of same[,] even after Bergman proactively insisted that Bushee do so as violations continued." (Id. at ¶ 13).

Additionally, once Bergman made these allegations, the owner of Precision Motorsports, a prior business partner of Bergman's, "began making hollow and unsubstantiated allegations to Bushee regarding Plaintiff." (Id. at ¶ 12). Around September 5, 2019, "Plaintiff received a Notice of Violation from Bushee and the City's Code Enforcement division giving Plaintiff one day to get into compliance with alleged violations of its CUP and the City's land development code ordinances violations." (Id. at ¶ 14). These violations were purportedly for "storing motorcycles that were for sale outside and for using unpermitted signage in front of its business." (Id.). In response, Plaintiff removed the signage and ensured that it did not display any vehicles for sale outside the building. (Id. at ¶ 15).

### C.   **Hearing About Code and CUP Violations**

Plaintiff was subsequently informed that it "would have to go before the City's Code Enforcement Board ('CEB') for a hearing on October 16, 2019," based on allegations that it was still violating the CUP and City Code. (Id. at ¶ 16). The City, through Bushee, contended that Plaintiff was storing vehicles for sale outside the building, was using Suite A for sales in violation of City code, and that the prohibited signage was still present. (Id. at ¶¶ 17-19). Plaintiff avers

3

that "[a]ny vehicles that were outside [the building] were not for sale but were moved there so that Plaintiff had room in Suite A to perform its repair work" and that all other allegations were false. (Id.). At the hearing, Bushee allegedly introduced outdated pictures of Plaintiff's property that falsely demonstrated that Plaintiff was not in compliance with the code and his CUP. (Id. at ¶ 20).

The CEB determined that Plaintiff was not in compliance with the City code. (Id. at ¶ 22). Plaintiff was fined $100 per day, starting on October 19, 2019, for displaying vehicles outside. (Id.). However, the CEB did not share a "defined plan for Plaintiff to be in compliance," particularly given Plaintiff's understanding that it was already in compliance. (Id.).

D.   **Precision Motorsports Hearing**

Precision Motorsports was also scheduled for a hearing before the CEB on October 16, 2019. (Id. ¶ 24). This date was approximately five months after the company was put on notice that it was in violation of the code. (Id.). During that time, the code violations "were never addressed or rectified." (Id.).

The hearing on Precision Motorsports's code violations was cancelled six days before the scheduled date. (Id.). The

City asserted that "the hearing and case were cancelled because the property Precision Motorsports was renting was being sold and this was hindering the closing process." (Id. at ¶ 25). Plaintiff counters that this cannot be a valid reason for cancelling the hearing because the rationale "is in direct contravention of [a] Florida statute which states that in the event that a sale happens prior to a hearing, the new owner has the right to request a rescheduled hearing or more time to fix any violations relating to the property." (Id.).

### E.   Post-Hearing Interactions

"[O]n or about October 18, 2019, Bushee, at Bergman's request, came to the Plaintiff's business to discuss the placement of vehicles outside during business hours due to the vagueness and inaccurate facts and context that had been inserted into the dispute." (Id. at ¶ 27). During the meeting, Bergman highlighted that a "large quantity of vehicles . . . were in for repair," and that this required Plaintiff to temporarily move the vehicles outside to free up workspace for the repair work. (Id. at ¶ 28). Bergman sought to clarify how he could stage the vehicles outside so that they would not violate the code or the CUP by appearing on display. (Id. at ¶ 29). Bushee informed Bergman that the vehicles could

remain temporarily staged in the way they were outside Suite B. (Id.). Bergman requested that Bushee provide this solution in writing to avoid further confusion. (Id. at ¶ 30). During the meeting, Bergman and Bushee also disagreed about Plaintiff's authority over the parking lots and exterior grounds of the property and whether the southeast corner of the parking lot was a legal traffic throughway. (Id. at ¶ 31).

Later during the meeting, Bushee noticed a customer's vehicle stored within the south end of the building. (Id. at ¶ 32). He asked whether the vehicle was for sale. (Id.). Bergman responded that, while "given the right price most things are for sale," the vehicle was not placed at that location for sale. (Id.). Bushee then contended that the vehicle was for sale because it did not appear to be in for repairs and had an expired tag. (Id.). He requested that Bergman provide him with information about the owner and the repair work being done on the vehicle. (Id.). Bergman refused to provide this information, as he believed that Bushee did not have authority to request this information and because the information is protected under Chapter 119 of the Florida Statutes. (Id. at ¶ 33). Based on Bergman's refusal, Bushee implied that Plaintiff would be subject to additional fines

for violating City code by displaying a vehicle for sale outside. (Id.).

Later, around October 23, 2019, Bushee provided Plaintiff with some materials about the code limitations on the parking area. (Id. at ¶ 34). However, he still did not provide the requested written statement about allowing cars to be parked outside on the property. (Id.).

After this date, Plaintiff firmly believed that "Bushee and certain City officials, including City Manager Spoor, [were] engaging in a conspiracy to target, harass, intimidate and discriminate against Plaintiff [through] selective enforcement of City codes." (Id. at ¶ 35).

In April 2021, "other neighboring businesses, without any type of CUP or exception to the applicable code[,] have, without any opposition from the City, been allowed to sell and rent new golf carts/vehicles from the premises in contravention of City code." (Id. at ¶ 36). Bergman has raised this fact to Bushee multiple times. (Id.). Bushee has responded that the businesses had been notified and brought into compliance; however, Bergman provided additional information that the businesses were not actually in compliance. (Id.).

Plaintiff asserts that the City has since increased its campaign against it. (Id. at ¶ 37). "On a number of occasions Bushee and other City officials, including the City Manager [] Spoor, have been seen spying on Plaintiff and its customers in an effort, as stated above, to 'catch' Plaintiff in a code violation - even when no complaint of a code violation has occurred." (Id.). For example, Bergman sent Bushee an email around June 9, 2021, informing him that he had seen Bushee "surreptitiously taking photos of golf carts on the property's parking lot" and seeking to inform Bushee that these carts were being repaired and had been placed in that location at the recommendation of the Sheriff's office. (Id. at ¶ 38). Bushee responded by claiming that Plaintiff was violating the same ordinances as before by parking golf carts outside and threatening to refer Plaintiff to the CEB as a repeat offender. (Id. at ¶ 39).

"After over a year of trying to seek a resolution with the City over alleged code violations Plaintiff was able to obtain documentation of Bushee admitting that the Property was not subject to the code of ordinances that he was trying to enforce and that reflect lies that he has told in front of the CEB and otherwise." (Id. at ¶ 40).

F.  **Procedural History**

Plaintiff filed suit against Defendants in state court on September 4, 2023. (Doc. # 1-1). Defendants removed the case to this Court on October 23, 2024. (Doc. # 1).

Plaintiff's complaint alleges six claims. (Doc. # 1-1). Count I alleges that the City violated its rights to equal protection of the law guaranteed by the Fourteenth Amendment. (Id. at ¶¶ 47-50). Count II alleges that the City also violated Plaintiff's procedural due process rights. (Id. at ¶¶ 51-56). Count III alleges that the City was negligent because it breached its duty "to ensure that its code enforcement[] efforts and policies were performed in an unbiased and professional manner." (Id. at ¶¶ 57-60). Count IV alleges civil conspiracy by Defendants Bushee and Spoor. (Id. at ¶¶ 61-64). Count V requests a permanent injunction against all Defendants. (Id. at ¶¶ 65-73). Count VI alleges tortious interference by the City and Bushee. (Id. at ¶¶ 74-79).

On October 30, 2023, the City, Bushee, and Spoor moved to dismiss the complaint. (Doc. # 13). Plaintiff responded on November 27, 2023. (Doc. # 23). The Motion is now ripe for review.

## II.  <u>Legal Standard</u>

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. <u>La Grasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004).

III. **Analysis**

    A.   **Count I: Equal Protection Clause**

    Defendants argue that the Court should dismiss Count I of the complaint for violation of the Equal Protection Clause of the Fourteenth Amendment by the City. (Doc. # 13 at 5-8).

    Plaintiff alleges that the City violated the Equal Protection Clause of the Fourteenth Amendment by, "acting under the color of state law, engag[ing] in an intentional and overt pattern of selectively enforcing codes of ordinances against Plaintiff such that it was treated differently from other similarly situated businesses and/or entities who were not subjected to the enforcement of code violations for the same alleged offenses." (Doc. # 1-1 at ¶ 48). In doing so, the City allegedly "unequally applied facially neutral ordinances against Plaintiff for the purpose of intentionally discriminating against Plaintiff." (Id. at ¶ 49).

    While Plaintiff does not provide much detail in the count itself, the factual background clarifies that Plaintiff particularly believes that it was treated differently than its competitor, Precision Motorsports. According to the complaint, Precision Motorsports was allegedly violating City codes by "failing to adhere to applicable parking guidelines

by allowing overflow parking in the streets," allowing employees and customers to park on Plaintiff's property, and displaying prohibited business signage. (Id. at ¶ 10-11). Plaintiff also highlights that its owner shared evidence of code violations by other businesses with Bushee and that none of these businesses were ever cited for the violations because Bushee asserted that they had come into compliance. (Id. at ¶ 36). Plaintiff does not identify these other businesses by name.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of laws." U.S. Const. amend. XIV, § 1. This clause establishes that "[t]he sovereign may not draw distinctions between individuals based solely on differences that are irrelevant to a legitimate governmental objective." Lehr v. Robertson, 463 U.S. 248, 265 (1983) (citing Reed v. Reed, 404 U.S. 71, 76 (1971)).

"[A] 'class of one' claim involves a plaintiff who 'alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1202 (11th Cir. 2007) (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).

Accordingly, "[t]o prove a 'class of one' claim, the plaintiff must show (1) that he was treated differently from other similarly situated individuals, and (2) that the defendant unequally applied a facially neutral ordinance for the purpose of discriminating against him." <u>Leib v. Hillsborough Cnty. Public Transp. Comm'n</u>, 558 F.3d 1301, 1307 (11th Cir. 2009) (citing <u>Young Apartments, Inc. v. Town of Jupiter</u>, 529 F.3d 1027, 1045 (11th Cir. 2008)). Defendants assert that Plaintiff has not sufficiently pled either prong of this test. (Doc. # 13 at 6).

"With respect to the first prong, [the Eleventh Circuit has] frequently noted that the 'similarly situated' requirement must be rigorously applied in the context of 'class of one' claims." <u>Leib</u>, 558 F.3d at 1307. "Too broad a definition of 'similarly situated' could subject nearly all state regulatory decisions to constitutional review in federal court and deny state regulators the critical discretion they need to effectively perform their duties. Conversely, too narrow a definition of 'similarly situated' could exclude from the zone of equal protection those who are plainly treated disparately and without a rational basis." <u>Griffin Indus., Inc.</u>, 496 F.3d at 1203.

"To be 'similarly situated,' the comparators must be *prima facie identical in all relevant respects*." Grider v. City of Auburn, 618 F.3d 1240, 1264 (11th Cir. 2010) (quoting Griffin Indus., Inc., 496 F.3d at 1204) (internal quotation marks omitted). "Governmental decisionmaking challenged under a 'class of one' equal protection theory must be evaluated in light of the full variety of factors that an objectively reasonable governmental decisionmaker would have found relevant in making the challenged decision." Griffin Indus., Inc., 496 F.3d at 1203. "Accordingly, when dissimilar governmental treatment is not the product of a one-dimensional decision . . . the 'similarly situated' requirement will be more difficult to establish." Id. at 1203-04.

Here, the Court agrees with Defendants that Plaintiff has not sufficiently pled a similarly situated comparator. As an initial matter, courts within the Eleventh Circuit have generally required plaintiffs to identify a similarly situated comparator with some degree of specificity when asserting a class-of-one claim. See, e.g., Zuniga v. City of Groveland, No. 5:23-cv-351-PRL, 2023 WL 5573962, at *5 (M.D. Fla. Aug. 29, 2023) (concluding that "Plaintiffs' speculative and vague allegations that they were treated differently from

14

other unspecified parties fails to state an equal protection claim"); <u>Leib</u>, 558 F.3d at 1307 ("Given the complaint's complete lack of factual detail regarding the 'similarly situated' requirement, Leib's 'class of one' claim was properly dismissed."). Accordingly, the unidentified businesses mentioned in Plaintiff's allegations (Doc. # 1-1 at ¶ 36) cannot qualify as similarly situated comparators.

The only comparator identified by name in the complaint is Precision Motorsports. While Plaintiff describes several similarities between itself and Precision Motorsports, including that Precision Motorsports's rental property is close to Plaintiff's and that Precision Motorsports was similarly notified of code violations (<u>Id.</u> at ¶¶ 8, 10, 13-14, 16, 24), Plaintiff's complaint does not include sufficient information to plausibly state that Precision Motorsports is a similarly situated comparator. Importantly, as Defendants highlight, Plaintiff does not allege that Precision Motorsports faced the same code violations as Plaintiff. (Doc. # 13 at 6); see <u>Palm Beach Polo, Inc. v. Vill. of Wellington</u>, No. 19-80435-CIV-DIMITROULEAS, 2021 WL 2499008, at *6 (S.D. Fla. May 14, 2021) ("In the context of a claim of unequal code enforcement, one of the relevant aspects most certainly would be the code that was being

enforced."); <u>Griffin Indus., Inc.</u>, 496 F.3d at 1205 ("A 'class of one' plaintiff might fail to state a claim by omitting key factual details in alleging that it is 'similarly situated' to another."). Plaintiff states that Precision Motorsports did not adhere to parking guidelines and restrictions on business signage. (Doc. # 1-1 at ¶ 11). These violations appear similar to the conduct for which Plaintiff was cited – parking violations and improper signage. (<u>Id.</u> at ¶ 14). However, Plaintiff must include additional information to show that the code violations with which Precision Motorsports was charged were similar to those with which Plaintiff was charged in order to plausibly state that Precision Motorsports is a similarly situated comparator.

Defendants also assert that the impending sale of the property that Precision Motorsports was renting makes enforcement of the business's code violations materially different. (Doc. # 13 at 7). At this stage, the Court is not convinced. Plaintiff asserts that a Florida Statute allows a new owner of a property to reschedule a hearing on code violations and that, therefore, the property sale cannot be a valid reason for cancelling the hearing on Precision Motorsports's code violations. (Doc. # 1-1 at ¶ 25; Doc. # 23 at 6-7). If the businesses were charged with similar code

violations and the sale of the property falls outside the range of factors that City could consider when deciding whether to enforce the code against violators, Precision Motorsports could qualify as a similarly situated comparator. See Griffin Indus., Inc., 496 F.3d at 1203 ("Governmental decisionmaking challenged under a 'class of one' equal protection theory must be evaluated in light of the full variety of factors that an objectively reasonable governmental decisionmaker would have found relevant in making the challenged decision.").

In short, Plaintiff has not plausibly alleged that Precision Motorsports is similarly situated. Accordingly, the Court dismisses Count I.

### B.   Count II: Procedural Due Process

Defendants next seek to dismiss Count II — for violation of Plaintiff's procedural due process rights by the City — for failure to plead unavailability of state remedies to cure any procedural due process violation that occurred. (Doc. # 13 at 8-10). Furthermore, Defendants assert that Plaintiff cannot plead this fact because such state remedies exist and Plaintiff participated in them. (Id.).

"[A Section] 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a

17

deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003) (citing Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994)), abrogated on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009). Due process generally requires notice and a chance to be heard. Cryder, 24 F.3d at 177 (citing Mathews v. Eldridge, 424 U.S. 319, 333 (1976)). However, "due process is a flexible concept that varies with the particular situation." Id.

Additionally, "procedural due process violations do not even exist unless no adequate state remedies are available." Cotton v. Jackson, 216 F.3d 1328, 1331 n.2 (11th Cir. 2000); see McKinney v. Pate, 20 F.3d 1550, 1563 (11th Cir. 1994) ("[E]ven if McKinney suffered a procedural *deprivation* at the hands of a biased Board at his termination hearing, he has not suffered a *violation* of his procedural due process rights unless and until the State of Florida refuses to make available a means to remedy the deprivation."). "A plaintiff must allege the unavailability of state remedies in the complaint." Conley v. City of Dunedin, No. 8:08-cv-1793-SCB-MAP, 2009 WL 812061, at *4 (M.D. Fla. Mar. 25, 2009). Even so, the central issue "is not whether Plaintiff[] actually

18

availed [itself] of Florida's . . . remedies, but whether Florida would offer such remedies if it were asked." Id. at *5.

In the complaint, Plaintiff states that it received notice of a violation and subsequently attended a hearing before the CEB. (Doc. # 1-1 at ¶¶ 14, 16-22). However, Plaintiff does not mention any process for appealing the CEB's determination. In its response to Defendants' motion to dismiss, Plaintiff asserts that "there is no appellate remedy in the code enforcement realm for subjecting Plaintiff to a disparate code enforcement process that resulted from improper motives." (Doc. # 23 at 8).

In contrast, Defendants highlight that "[t]he state of Florida allows aggrieved parties to appeal 'final administrative orders of an enforcement board to the circuit court.'" Conley v. City of Dunedin, 2009 WL 812061, at *5 (quoting Fla. Stat. § 162.11). Because this appeal process considers both the record underlying the initial decision and the constitutionality of the proceedings, Florida "provides a remedy for deprivations of procedural due process resulting from a code enforcement order." Id.

Accordingly, it appears that Plaintiff could have appealed the decision of the CEB to the Florida circuit court

19

and raised the argument that the City's alleged improper motives rendered the CEB decision unconstitutional. "Because [Plaintiff's] complaint fails to allege that this available remedy [existed and] was inadequate, [it] fail[s] to properly state a federal procedural due process claim" under Section 1983. Id. Accordingly, Count II is dismissed.

### C.   Count III: Negligence

Defendants also seek to dismiss Count III for negligence by the City, asserting that the City's enforcement of its code is a discretionary function that does not carry a duty of care. (Doc. # 13 at 10-12).

To state a claim for negligence, a plaintiff must plead four elements: "(1) a duty to the plaintiff; (2) the defendant's breach of that duty; (3) injury to the plaintiff arising from the defendant's breach; and (4) damage caused by the injury to the plaintiff as a result of the defendant's breach of duty." Delgado v. Laundromax, Inc., 65 So. 3d 1087, 1089 (Fla. 3d DCA 2011) (citing Westchester Exxon v. Valdes, 524 So. 2d 452, 454 (Fla. 3d DCA 1988)).

However, the analysis changes when the defendant is a government entity. Under the Florida Constitution and Florida Statute Section 768.28(1), "[t]he State of Florida has waived sovereign immunity from liability in tort actions 'for any

20

act for which a private person under similar circumstances would be held liable.'" Pollock v. Fla. Dept. of Highway Patrol, 882 So. 2d 928, 932 (Fla. 2004) (quoting Henderson v. Bowden, 737 So. 2d 532, 534-35 (Fla. 1999)); Fla. Const. art. X, § 13; Fla. Stat. § 768.28(1). This waiver of sovereign immunity also applies to subdivisions of the State of Florida. See Trianon Park Condo. Ass'n, Inc. v. City of Hialeah, 468 So. 2d 912, 919-21 (Fla. 1985) (including cities in its analysis of state sovereign immunity). "Thus, '[t]here can be no governmental liability unless a common law or statutory duty of care existed that would have been applicable to an individual under similar circumstances.'" Pollock, 882 So. 2d at 932 (quoting Henderson, 737 So. 2d at 535).

To clarify governmental tort liability, the Florida Supreme Court has divided "governmental functions and activities" into four categories: "(I) legislative, permitting, licensing, and executive officer functions; (II) enforcement of laws and the protection of the public safety; (III) capital improvements and property control operations; and (IV) providing professional, educational, and general services for the health and welfare of the citizens." Trianon Park Condo. Ass'n, Inc., 468 So. 2d at 919. Category II, for enforcement of laws and the protection of the public safety,

encompasses "[h]ow a governmental entity, through its officials and employees, exercises its discretionary power to enforce compliance with the laws duty enacted by a governmental body." Id. No duty of care exists as to these functions and activities. Id.

Additionally, "[s]tatutes and regulations enacted under the police power to protect the public and enhance the public safety do not create duties owed by the government to citizens as individuals without the specific legislative intent to do so." Id. at 922.

Florida courts have stated that a city cannot "be held liable for an injury to an individual upon an allegation that the city failed properly to enforce a city ordinance." Shoner v. Concord Fla., Inc., 307 So. 2d 505, 505 (Fla. 3d DCA 1975). While limited caselaw is available regarding whether a plaintiff can bring a negligence claim against a governmental entity for violations of the city land development code, courts within the Eleventh Circuit have determined that no duty of care exists as to enforcement of other types of city codes. See, e.g., Dan Van Tran v. City of Miami, No. 05-21206-CIV-JORDAN, 2006 WL 8447801, at *7 (S.D. Fla. July 27, 2006) (finding no duty of care related to the city's enforcement of its building code provisions). Additionally,

Plaintiff does not allege that the provision of the City code under which it was cited created a duty owed by the government.

Plaintiff asserts that this case is distinguishable from other cases declining to impose a duty of care for enforcement of city codes because "the code enforcement officer chose to actively target Plaintiff for nefarious reasons and went beyond his normal and anticipated duties." (Doc. # 23 at 10). Plaintiff asserts that Bushee placed Plaintiff in a "zone of risk" and thus assumed a special tort duty as a law enforcement officer. (Id. at 11); see Smith v. Campbell, 295 F. App'x 314, 317 (11th Cir. 2008) ("Florida courts have established that when government officials undertake some risky behavior, they owe a duty to those individuals who could potentially be harmed by this behavior (those within the 'foreseeable zone of risk') to take reasonable precautions just as an ordinary non-government citizen would owe.").

The Court is unconvinced. Even assuming that Bushee could create a zone of risk by causing or otherwise incentivizing code violations on Plaintiff's property, Plaintiff has not alleged that Bushee did so. Instead, Plaintiff asserts that the City failed to ensure that

Plaintiff was treated in an unbiased and professional manner. (Doc. # 1-1 at ¶ 59). This does not suffice.

Accordingly, Count III is dismissed.

### D.   Count IV: Civil Conspiracy

Defendants also argue that Count IV for civil conspiracy by Defendants Bushee and Spoor should be dismissed. (Doc. # 13 at 12-14). Plaintiff asserts that "Bushee and Spoor, along with other City officials, . . . conspire[d], arrange[d] and act[ed] in concert to subject the Plaintiff to a pattern of selective enforcement of various City codes." (Doc. # 1-1 at ¶ 62).

As an initial matter, Plaintiff's complaint is unclear whether it asserts civil conspiracy under Section 1983 or under Florida law.

If alleging a claim under Section 1983, Plaintiff's claim must fail due to the intracorporate conspiracy doctrine. "Under the intracorporate conspiracy doctrine, a corporation's employees cannot conspire among themselves when acting in the scope of their employment, as their actions are attributed to the corporation itself . . . ." Detris v. Coats, 523 F. App'x 612, 615 (11th Cir. 2013) (citation omitted). "The doctrine applies to public entities such as the City and its personnel." Denney v. City of Albany, 247 F.3d 1172, 1190

(11th Cir. 2001). In the complaint, Plaintiff asserts that Bushee and Spoor conspired with other City officials. (Doc. # 1-1 at ¶ 62). Plaintiff does not assert that any individuals outside the City government were involved. Additionally, it appears that Bushee and Spoor were acting in the scope of their employment. "The scope-of-employment inquiry is whether the employee . . . was performing a function that, but for the alleged constitutional infirmity, was within the ambit of the officer's scope of authority (i.e., job-related duties) and in furtherance of the employer's business." Grider, 618 F.3d at 1261. Plaintiff's claim focuses entirely on Bushee and Spoor's enforcement of the City code. (Doc. # 1-1 at ¶ 62). Accordingly, but for any constitutional infirmity, their actions fall within Defendants' roles as Community Compliance Officer and City Manager, respectively. (Id. at ¶¶ 4-5).

Plaintiff's claim, as pled, also does not state a claim under Florida law. "To state a claim for civil conspiracy under Florida law, a plaintiff must allege: '(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy.'" Corbett v. Transp. Sec. Admin., 968 F. Supp. 2d 1171, 1190

25

(S.D. Fla. 2012) (quoting <u>United Techs. Corp. v. Mazer</u>, 556 F.3d 1260, 1271 (11th Cir. 2009)), <u>aff'd</u>, 568 F. App'x 690 (11th Cir. 2014). "[O]rdinarily[,] there can be no independent tort for conspiracy. However, if the plaintiff can show some peculiar power of coercion possessed by the conspirators by virtue of their combination, which power an individual would not possess, then conspiracy itself becomes an independent tort." <u>Churruca v. Miami Jai-Alai, Inc.</u>, 353 So. 2d 547, 550 (Fla. 1977). "The essential elements of this tort are a malicious motive and coercion through numbers or economic influence." <u>Id.</u>

Plaintiff asserts that Bushee and Spoor committed the underlying tort of negligence (Count III) and that they showed a peculiar power of coercion such that civil conspiracy should qualify as an independent tort committed by these defendants. (Doc. # 23 at 12). As discussed above, Plaintiff has not sufficiently alleged its negligence claim.

Further, Plaintiff has not plausibly alleged that Bushee and Spoor held a peculiar power of coercion. "The typical case for the 'peculiar power' exception . . . is the case of a group boycott to 'blacklist' someone from a given industry." <u>Hvide v. Hold Fin. Ltd.</u>, No. 20-22266-CIV-CANNON/Otazo-Reyes, 2021 WL 8154846, at *10 (S.D. Fla. Sept. 13, 2021). "Outside

of this and related or similar fields, instances of conspiracy which is in itself an independent tort are rare and should be added to with caution." Id. (quoting Liappas v. Augoustis, 47 So. 2d 582, 583 (Fla. 1950)). "More generally, courts have described the exception as a narrow exception that applies only if the 'conduct complained of would not be actionable if done by one person, but by reason of force of numbers or other exceptional circumstances, the defendants possess some peculiar power of coercion.'" Id. (quoting Kee v. Nat'l Rsrv. Life Ins. Co., 918 F.2d 1538, 1542 (11th Cir. 1990)).

Plaintiff asserts that this peculiar power of coercion existed because the City officials worked together to spy on Plaintiff to catch him in a code violation, even when no complaint had occurred. (Doc. # 23 at 12). However, even if there was an agreement between Bushee and Spoor to try to catch Plaintiff committing code violations, Plaintiff does not plausibly allege that Defendants could not have achieved the same results acting alone. See Santillana v. Fla. State Court Sys., No. 6:09-cv-2095-PCF-KRS, 2010 WL 271433, at *14 (M.D. Fla. Jan. 15, 2010) ("Santillana also fails to state a claim of civil conspiracy under the 'force of numbers' exception because the Court cannot conclude from the alleged

facts that she could not have been terminated by one of the alleged conspirators acting alone."). Count IV is dismissed.

### E.   **Count V: Permanent Injunction**

Defendants argue that Plaintiff's standalone request for a permanent injunction should also be dismissed. (Doc. # 13 at 14-15). "[A]n injunction is not a cause of action but a remedy." Pierson v. Orlando Reg'l Healthcare Sys., Inc., 619 F. Supp. 2d 1260, 1288 (M.D. Fla. Apr. 28, 2009). Plaintiff concedes that it cannot seek injunctive relief as an independent cause of action. (Doc. # 23 at 13). Therefore, the Court dismisses Count V. If warranted, Plaintiff may seek injunctive relief as a remedy for other counts alleged in the amended complaint.

### F.   **Count VI: Tortious Interference**

Finally, Defendants argue that Plaintiff's claim for tortious interference against Defendants Bushee and the City must be dismissed. (Doc. # 13 at 15-17). Plaintiff asserts that these Defendants interfered with Plaintiff's business relationship with the owners of two boats for which Plaintiff was set to complete repair work. (Doc. # 1-1 at ¶¶ 76-77). The City and Bushee allegedly interfered with these relationships by issuing a violation against Plaintiff that required it to have the boats removed by the owners. (Id. at

28

¶ 77). No formal complaint existed to prompt the issuance of the violation and Plaintiff never performed the repair work on the boats. (Id. at ¶¶ 78-79).

To plead tortious interference with a business relationship under Florida law, a plaintiff must allege "(1) the existence of a business relationship[;] . . . (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." Whetstone Indus. Inc. v. Yowie Grp. Ltd., No. 3:17-cv-HES-PDB, 2019 WL 13177819, at *2 (M.D. Fla. Aug. 15, 2019) (quoting Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994)).

Importantly, "[a]n officer, employee, or agent of the state [of Florida] or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a).

29

Defendants assert that Plaintiff insufficiently alleges knowledge of and intentional and unjustified interference with the business relationships at issue in the claim. (Doc. # 13 at 15-17). Additionally, Defendants argue that Plaintiff has not pled "even conclusory allegations that Bushee acted outside the course and scope of his employment or in bad faith," and thus the claim must be dismissed as to Bushee. (Id. at 17).

The Court agrees that Plaintiff has not sufficiently pled the elements of tortious interference. Even assuming that Defendants were aware of the business relationships given the location of the boats on Plaintiff's property, Plaintiff has not plausibly alleged that Defendants interfered with the relationships in an unjustified way. As Defendants highlight, Plaintiff's only allegation within the count that Bushee's actions were unjustified is that no formal complaint existed at the time of the actions. (Id.). Based on this information, it is not clear to the Court whether a formal complaint is a necessary precondition for Bushee to issue a violation and, thus, whether Bushee's actions were unjustified. Bushee is a Community Compliance Office for the City. (Doc. # 1-1 at 4). As such, the violation that underlies this claim appears within the scope of Bushee's authority.

30

Additional information is necessary for Plaintiff to plausibly allege that Bushee's actions were unjustified.

The lack of information supporting whether Bushee's actions were unjustified also ties into Plaintiff's failure to sufficiently allege whether Bushee may be held personally liable for any tortious interference. Pursuant to Florida law, Bushee can only be held personally liable in tort "as a result of any act, event, or omission of action in the scope of . . . his employment or function" if he "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). Throughout the complaint, Plaintiff includes several allegations that Bushee specifically targeted Plaintiff. However, Plaintiff does not include any allegations that, when issuing this violation, Bushee acted outside the scope of his employment, in bad faith, or in another way that would subject him to personal liability. As such, Plaintiff has not made allegations that plausibly state a claim against Bushee.

Therefore, Count VI is dismissed.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendants City of Safety Harbor, Florida, Paul Bushee, and Matt Spoor's Motion to Dismiss (Doc. # 13), is **GRANTED.**

(2)   The complaint is **DISMISSED** with leave to amend.

(3)   Plaintiff Safety Harbor Powersports, LLC may file an amended complaint within 14 days from the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 12th day of July, 2024.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE